UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
WEGROW AG,                                   :     22-CV-08286-ER
                                             :
                Petitioner,             :
                                             :
v.                                           :
                                             :
TIBA FOR TRADING & AGENCIES &                :
AGRICULTURE DEVELOPMENT,                     :
                                             :
                Respondent.            :
------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
MOTION FOR LEAVE TO SERVE RESPONDENT VIA ALTERNATIVE MEANS**

Petitioner WeGrow AG ("Petitioner") respectfully requests that the Court, pursuant to Federal Rule of Civil Procedure 4(f)(3), grant it leave to serve Respondent Tiba for Trading & Agencies & Agriculture Development ("Respondent"), with documents other than the Summons and the Petition and other relevant documents, which have already been served on Respondent via the Ministry of Justice of the Arab Republic of Egypt (International and Cultural Cooperation Department) (*i.e.*, the Egyptian Central Authority) (Doc. No. 15), through alternative means, including email, Defendant's accounts with social networking sites Facebook and LinkedIn, and via international courier (DHL).

Petitioner commenced this action on September 28, 2022, alleging in a Petition to Appoint Arbitrator (Doc. No. 6) that the Respondent's appointed arbitrator[1] was unable and/or unwilling to engage with Petitioner's appointed arbitrator to select an arbitration chairperson necessary to complete the arbitration Tribunal and progress the parties' arbitration. *See Affidavit of Kevin J. Lennon in Support of Petitioner's Motion for Leave to Serve Respondent Via Alternative Means*

---

[1] Petitioner has a pending New York arbitration against Respondent for breach of obligations under two commercial contracts in which Petitioner agreed to buy and Respondent agreed to sell commodities.

(*"Lennon Aff."*) *at ¶2.* As per Federal Rule of Civil Procedure 4(f)(1), and the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), the Petitioner arranged for service on Respondent of the Summons, Petition and related documents, via the Egyptian Central Authority. *Lennon Aff. at ¶3.* Although these papers were delivered[2] to the Egyptian Central Authority in October 2022, it was only in June 2024 that Petitioner received a Certificate of Service attesting that the papers had been served on Respondent in late November 2022. *Id. at ¶4;* Despite numerous requests made by Petitioner's process server, the Egyptian Central Authority failed to respond regarding the status of service. *Id.* Petitioner filed its Affidavit of Service on June 26, 2024. *Id. at ¶5; Doc No. 15.* Given that service was carried out in November 2022, Respondent has long been in default of its obligation to respond to the Petition, and Petitioner intends to seek a default judgment in order to proceed with the arbitration. *Lennon Aff. at ¶6.*

In order to expedite an arbitration that was commenced over two (2) years ago, and to avoid a potential further year and a half delay in obtaining a further Certificate of Service, Petitioner is filing the instant motion seeking leave of the Court to serve Respondent via alternative means with an Order to Show Cause for issuance of a default judgment based on Respondent's failure to respond to the Petitioner despite being served with the same in November 2022. *Id. at ¶7.* Petitioner's Order to Show Cause seeking a default judgment will request that the Court grant the relief sought in the Petition: an Order that Respondent's appointed arbitrator be dismissed for his failure to act and that Petitioner's appointed arbitrator shall serve as the sole arbitrator of the parties' pending arbitration. *Id. at  ¶8.*

---

[2] Petitioner engaged a process server - Crowe Foreign Services – to facilitate and oversee service pursuant to the Hague Service Convention.

2

Absent the Court granting the requested leave, the Petitioner will be required to serve all subsequent documents on the Respondent in accordance with the Hague Service Convention[3]. A court order authorizing Petitioner to serve the Respondent through alternative means would enable the Petitioner to avoid the Hague Service Convention's time-intensive procedures and promptly resume the progress of its arbitration against the Respondent.

## APPLICABLE LAW

Under Rule 4(f)(3) of the Federal Rules of Civil Procedure, a plaintiff may serve a foreign defendant by alternative methods, provided that such means are directed by the court and are not prohibited by an international agreement. The alternative methods of service must also comport with due process and be "… reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See, Madu, Edozie & Madu, P.C. v. Socketorks Ltd. Nigeria*, 265 F.R.D. 106, 115, 2010 U.S. Dist. LEXIS 6239, at *15 (S.D.N.Y. 2010) (*citing Leussenhop v. Clinton County, N.Y.*, 466 F.3d 259, 269 (2d Cir. 2006) (citations omitted)); *see also, Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002).

Rule 4(f)(3) provides the Court and litigants with ample flexibility in arranging service in a variety of circumstances, particularly when a service convention does not offer an appropriate or timely means of service, as is the case presented here. While service under Rule 4(f)(3) is not a

---

[3] While some cases allow for service of non-case initiating documents under Rule 5, Article 1 of the Hague Service Convention applies in civil or commercial cases "where there is a need to make 'formal delivery' of a judicial document." *See, S.E.C v. Credit Bankcorp., Ltd*., No. 99 Civ. 11395 (RWS), 2011 U.S. Dist. LEXIS 14797, at *10 (S.D.N.Y. Feb. 14, 2011); *S&S Machinery Corp. v. Wuhan Heavy Duty Machine Tool Group Co*., 2012 U.S. Dist. LEXIS 38608, at *21 (E.D.N.Y. Jan. 13, 2012), *adopted by S&S Machinery Corp., v. Wuhan Heavy Duty Machine Tool Group Co*., 2012 U.S. Dist. LEXIS 38605 (E.D.N.Y. Mar. 21, 2012). Due to the ambiguity in the Hague Service Convention's scope, in an abundance of caution the Petitioner requests the Court grant it leave to carry out service on the Respondent through alternative means pursuant to Federal Rule of Civil Procedure 4(f)(3). Petitioner will also serve the Respondent via international courier (*e.g*., DHL) at its last known address as is provided for in Rule 5(b)(2)(C) of the Federal Rules of Civil Procedure.

last resort, nor extraordinary relief, it afford parties such as the Petitioner which have experienced significant delays in carrying out service with several ways to serve process on an international defendant like the Respondent. *See, United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 265-66, 2012 U.S. Dist. LEXIS 78833, at *10 (S.D.N.Y. 2012).

Rule 4(f) also does not obligate litigants to attempt service of process by way of any of the other methods set forth therein *prior* to seeking leave of the court for alternative relief under 4(f)(3). *Rio Props*., 284 F.3d at 1014–15. Some courts in the Second Circuit, however, have required a plaintiff to show that it made attempts to serve the defendant in accordance with the Hague Service Convention and that the circumstances are such that the court's intervention is necessary. *Madu*, 265 F.R.D. at 115-16. Here, the issue is not whether service under the Hague Service Convention is available, but rather the extreme delay encountered with receiving a Certificate of Service from the Egyptian Central Authority attesting to the service. Whether to grant leave approving service via alternative means as per Rule 4(f)(3) is left to the court's sound discretion. *Lebanese Canadian Bank SAL*, 285 F.R.D. at 266.

The methods of service that Petitioner is proposing are not prohibited by international agreement and they comport with due process. Furthermore, as explained above, Petitioner submits that the excessive delay it experienced in carrying out service of the Summons and Petition pursuant to the Hague Service Convention, in which the Egyptian Central Authority took over a year and half to issue a Certificate of Service following actual service being made, further justifies the court's grant of the Petitioner's requested leave.

1.  **Petitioner Proposes to Serve the Respondent Via Email, Via Respondent's Facebook, LinkedIn and Instagram Social Media Accounts and Via International Courier (*e.g.*, DHL)**

The United States and Egypt are signatories to the Hague Service Convention.[4] Article 2 of the Hague Service Convention requires all judicial documents in civil matters to be served through a Central Authority. *See Hague Service Convention, Art. 2.* Article 10 of the Hague Service Convention, however, also permits service of process through means other than the signatory's Central Authority as long as the destination state does not object to those means. *Hague Service Convention, Art. 10.* Specifically, Article 10 allows for service through postal channels or through judicial officers or officials in the destination state. *Id.* Egypt has objected to each method of service permitted under Article 10. *See, Shenouda v. Mehanna,* 203 F.R.D. 166, 171, 2001 U.S. Dist. LEXIS 21106, at *12 (D.N.J. Oct. 4, 2001). Egypt's objections to alternative means of service, however, are limited to those specifically described in Article 10. *Gurung v. Malhotra*, 279 F.R.D. 215, 219-20, 2011 U.S. Dist. LEXIS 136578, at *8-12 (S.D.N.Y. 2011); *see also*, *Viral DRM LLC v. Schedule A*, 2023 U.S. Dist. LEXIS 234801, at *3-4 (N.D.Cal. Nov. 29, 2023) ("The United States and all of these nations are signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the 'Hague Service Convention').

The Hague Service Convention does not preclude the Court from authorizing service of process via e-mail or posting on a designated website. As such, there are no international agreements prohibiting service by e-mail or posting on a designated website. Alternative means of service, such as e-mail and website posting, are not prohibited by the Hague Service Convention where a signatory nation has not expressly objected to those means. The Hague Convention does

---

[4] The Hague Conference on Private International Law reflects the list of signatories and is available at http://www.hcch.net/index_en.php?act=conventions.status&cid=17.

not specifically preclude service by e-mail and Internet publication. Further, '[w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or publication.'"). Thus, the Court is free to order alternative means of service such as email and social media accounts which are not explicitly stated in Article 10. *Id.*

The alternative service methods proposed by Petitioner are not specified in Article 10. Indeed, Article 10 does not mention service by email and courts have permitted plaintiffs to serve defendants by email in countries that object to Article 10. *Gurung*, 279 F.R.D. at 220 (India's "objection to service through postal channels does not amount to an express rejection of service via electronic mail"); *Viral DRM LLC*, *supra,* 2023 U.S. Dist. LEXIS 234801, at *5-6 (allowing service by e-mail and website posting on defendants in Ukraine, Slovenia, Albania, Viet Nam, and Egypt); *Williams–Sonoma Inc. v. Friendfinder Inc.*, 2007 U.S. Dist. LEXIS 31299, at *5-6 (N.D.Cal. Apr. 17, 2007) (permitting service by electronic mail for defendants in countries that objected to Article 10 of the Hague Service Convention); *MacLean-Fogg Co. v. Ningbo Fastlink Equipment Co., Ltd.*, 2008 U.S. Dist. LEXIS 97241, at *5-6 (N.D.Ill., Dec. 1, 2008) (permitting service by electronic mail for defendants in countries that objected to Article 10); *cf. Agha v. Jacobs*, 2008 U.S. Dist. LEXIS 109326, at *3-4 (N.D.Cal May 13, 2008)(post-service motion for leave to serve via email and/or facsimile on defendant based in Germany denied).

Likewise, Article 10 does not address service through social media websites or international courier and thus Egypt has not objected to these forms of service. Petitioner is not aware of any other international treaty which prohibit its proposed methods of service.

2. **Petitioner's Proposed Methods of Service Are Reasonably Calculated to Apprise Respondent of the Pendency of the Action and Afford It with an Opportunity to Present Any Objections**

The proposed methods of service, particularly service through email and social networking websites, are not only permissible, but also are most likely to provide the Respondent with notice of future filings and thus comport with due process. For instance, the Respondent uses email and its social networking accounts to communicate with consumers. *See Lennon Aff. at* ¶¶ 9-14.

Petitioner has identified numerous valid and working email address for various individuals employed by Respondent. *Lennon Aff. at* ¶¶ *9-13, Exs. 1-5* Furthermore, Respondent has active Facebook, LinkedIn and Instagram social media accounts, which allow third parties to send messages directly to them. *Id. at* ¶14, *Exs. 6-8*. The emails and the social networking accounts are a viable basis to serve Respondent. Such proposed methods of service are also reasonably calculated to apprise the Respondent of the pendency of the action and afford it with an opportunity to respond.

3. **Petitioner Has Already Carried Out Service of the Summons and Petition Via the Hague Service Convention but Experienced Extreme delay, and the Court Should Grant the Requested Leave so Petitioner Can Advance the Pending Arbitration**

As explained above, in order to serve the Respondent with the Summons and Petition, the Petitioner, pursuant to Federal Rules of Civil Procedure 4(f)(1) and 4(h), followed the procedures of the Hague Service Convention and used Crowe Foreign Services to serve the Summons, Petition and related documents on Respondent via the Egyptian Central Authority. However, it took a year and a half to obtain a Certification of Service after service had been made. During the time that Petitioner was seeking to confirm the status of service the Egyptian Central Authority failed to respond to repeated inquiries from Crowe Foreign Services. *Lennon Aff.,* ¶¶ *3-5*.

The Respondent, to date has refused to file any responsive pleadings or otherwise appear in this action, despite having been properly served under the Hague Service Convention in November 2022. Accordingly, the Respondent remains unrepresented by counsel in this action, and therefore, unless the Court authorizes Petitioner to serve the default filings and orders on the Respondent via its proposed alternative means, Petitioner will be required to serve the Respondent pursuant to the Hague Service Convention, which will likely result in further tremendous delay. Hence, granting leave to allow for service under Rule 4(f)(3) is appropriate where, as here, the Hague Service Convention has proven ineffective and inordinately time consuming. *Richmond Technologies, Inc. v. Aumtech Bus. Solutions*, 2011 U.S. Dist. LEXIS 71269, at *43-46 (N.D.Cal. July 1, 2011) (authorizing service through Rule 4(f)(3) where service through the Hague Service Convention would take 6-8 months).

It took over a year and half to serve the Summons and Petition on Respondent via the Egyptian Central Authority pursuant to the Hague Service Convention. To avoid future undue delay, the Court's intervention and authorization allowing the Petitioner to serve the Respondents through alternative means is necessary to proceed expeditiously with this case. *Lennon Aff. at ¶¶ 15-17*.

## **CONCLUSION**

Petitioner's proposed methods of alternative service are not prohibited by international agreement and are reasonably calculated to apprise the Respondent of the pendency of this action. A further delay, beyond the year and half delay experienced in serving the Respondent with the Summons and Petition via the Hague Service Convention, should be avoided. Rule 1 of the Federal Rules of Civil Procedure directs that the rules "should be construed to, administered, and employed by the court to secure the just, speedy, and inexpensive determination of every action

and proceeding." *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Thus, the Court's intervention is necessary to enable Petitioner to avoid further delay and to hasten the pending arbitration.

Dated: August 30, 2024
      New York, NY

                            Respectfully submitted,

                            **LENNON, MURPHY & PHILLIPS, LLC**
                            *Attorneys for Petitioner*
                            **WEGROW AG**

               By: _____
                      Kevin J. Lennon, Esq. (KL 5072)

                            The Graybar Building
                            420 Lexington Ave., Ste. 300
                            New York, New York 10170
                            Tel.   (212) 490-6050
                            Fax   (212) 490-6070
                            Email: kjl@lmplaw.net